# EXHIBIT B

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 13

FILED
1/20/2023 11:10 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09383
Calendar, 13
21128155

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

**ATTORNEY CODE: 46837**
**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

HEATHER DURHEIM, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

SALLY BEAUTY SUPPLY LLC, and SALLY BEAUTY HOLDINGS, INC.,

Defendants.

Case No.: 2022CH09383

Hon. Anna H. Demacopoulos Cal. 13

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

NOW COMES Plaintiff, Heather Durheim (hereinafter, "Plaintiff'), who brings this First Amended Class Action Complaint individually and on behalf of all other similarly situated individuals against Defendants SALLY BEAUTY HOLDINGS, INC. and SALLY BEAUTY SUPPLY LLC d/b/a SALLY BEAUTY (hereinafter, "Defendants"), pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 et seq. Plaintiff files suit to remedy Defendants' unlawful collection, capture, storage, and use of Plaintiff's and the proposed class's biometric information through the Virtual Try-On tool offered on Defendants' websites and mobile apps without developing and making available to the public a written policy which establishes a retention schedule and guidelines for permanent destruction of such information.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Heather Durheim resides in Petersburg, Illinois.

2. Defendant SALLY BEAUTY HOLDINGS, INC. is incorporated in the State of Delaware with its principal place of business in Denton, Texas.

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

3. Defendant SALLY BEAUTY SUPPLY LLC is organized in the State of Virginia with its principal place of business in Denton, Texas. Upon information and belief, Sally Beauty Supply LLC is wholly owned by Sally Beauty Holdings, Inc. Defendant SALLY BEAUTY SUPPLY LLC is registered as a Foreign LLC in Illinois with its registered agent, Corporate Creations Network IN, located in Cook County, Illinois. Defendants also operate retail businesses selling beauty products to consumers located in Cook County, Illinois and in every County of Illinois.

4. Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because the transactions or some part thereof out of which these causes of action arose occurred within every County in the State of Illinois, and all Defendants are nonresidents of the State of Illinois.

5. Jurisdiction is proper in this Court because Plaintiff is a citizen of Illinois and Defendants purposefully availed themselves of the laws, protections, and advantages of Cook County, Illinois by conducting business in this State, and within every County in this State, with consumers like Plaintiff.

## THE BIOMETRIC INFORMATION PRIVACY ACT ("BIPA") LEGAL FRAMEWORK

6. The Illinois General Assembly enacted BIPA to protect the privacy rights of consumers in Illinois.

7. BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.[1]

---

[1] Section 10 of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/, states: "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. . . . 'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

8. "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id.*

9. Section 14/15(a) of BIPA requires "private entities" like corporations that collect certain biometric identifiers or biometric information to take a number of specific steps to safeguard consumers' data; inform consumers of the entities' uses, retention of, and destruction of their biometric information; and obtain informed consent before collecting such data.

10. With respect to safeguarding biometrics, BIPA requires that private entities in possession of biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id.* § 14/15(a).

11. Section 14/15(b) requires that any private entity in possession of biometric identifiers or biometric information must safeguard such data "using the reasonable standard of care within the private entity's industry" and must "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id.* § 14/15(e).

12. With respect to informed consent, BIPA provides:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

> that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id.* § 14/15(b).

13. Section 14/15(c) provides: "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." *Id.* § 14/11(c).

14. Under BIPA, a private entity is prohibited from disclosing; redisclosing, or otherwise disseminating a consumer's biometric identifier or biometric information unless the consumer has consented to the disclosure or redisclosure. *Id.* § 14/15(d).

15. BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id.* § 14/20. Where a violation is the result of negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation. If the violation was intentional or reckless, BIPA provides the greater of actual damages or liquidated damages of $5,000 per violation. *Id.*

## DEFENDANTS COLLECT BIOMETRIC INFORMATION THROUGH A "VIRTUAL TRY-ON" TOOL

16. Defendant SALLY BEAUTY HOLDINGS INC. is a makeup company that markets a variety of products, alone and through its subsidiaries including, as relevant here, SALLY BEAUTY SUPPLY LLC.

17. Defendants describe themselves as the world's largest distributor and retailer of professional beauty products, based on a store count of more than 3,700 stores in 12 countries, and operate stores throughout the United States. Upon information and belief, Defendants operate at least one dozen brick and mortar stores in Illinois.

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

18. To provide a consumer experience that more closely matches a visit to a retail store, Defendants employ a technology that uses virtual reality ("VR") and augmented reality ("AR"). This technology captures the consumer's facial geometry, and then creates a detailed geometric map of the user's face to show the consumer what he or she would look like wearing Sally Beauty's makeup or hair color. Defendants use the same tool for a number of different products, including makeup, beard color, and hair color.

19. The technology developer, when interviewed regarding the technology and how it operates, has stated that "a purely augmented reality virtual try on tool is not accurate. We want to do smart try-on. That's why we invest a lot in AI and very naturally when you get into AI you try to understand the entire face. . . . If you don't get these attributes, you won't be able to get a very accurate trial. It would be more like a sticker put on your face - it won't work."[2]

20. The technology aggregates hair color and makeup product recommendations across a variety of Sally Beauty brand offerings, including Ion, Arctic Fox, Wella, Ardell and COL-LAB. By integrating the interactive AI try-on experience via the Sally Beauty websites, in-store kiosks, and mobile app, Defendants can and do use, collect, capture, or otherwise obtain, store, share, and profit from users' biometric information and biometric identifiers.[3] The web-based Try-On Tool is available to and accessed by users of traditional computers such as desktops and laptops, mobile devices such as smart phones and tablets, and through dedicated systems such as in-store kiosks.

---

[2] "Perfect Corp YouCam app used machine learning to create beard try-on technology," Cullor, Ravyn, Cosmetics.com. https://www.cosmeticsdesign.com/Article/2022/08/25/perfect-corp-using-machine-learning-in-beard-virtual-try-on (August 25, 2022).

[3] "Perfect Corp. partners with Sally Beauty on AI hair color experience," retailcustomerexperience.com. https://www.retailcustomerexperience.com/news/perfect-corp-partners-with-sally-beauty-on-ai-hair-color-experience/ (Dec. 23, 2019).

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

21. "The technology allows consumers to virtually try on hair color and makeup before purchasing, creating a more confident shopping experience. ColorView™ queries the user's preferences and goals, then matches them to recommended product categories and shades. The user can then virtually try on the products and selected shades through real-time Artificial Intelligence and Augmented Reality hair and makeup color technology. 'The app uses a framework that allows us to build once and publish to multiple app stores,' said Joe Brenner, group vice president & chief information officer. 'The app accomplishes Augmented Reality by using a proprietary set of Artificial Intelligence libraries to perform facial recognition, facial mapping and real-time biometric tracking using our customer's smartphone.'"[4]

22. Defendants do not inform consumers who use the tool in writing that they are capturing or collecting facial geometry and creating a detailed geometric map of the user's face, or the specific purpose and length of term for which it is collecting, storing, or using such data, which data is a biometric identifier specifically protected by BIPA, nor do Defendants obtain consumers' informed written consent before capturing or collecting such data and creating the geometric facial map.

23. Defendant's website does not (a) inform the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (b) inform the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which-a biometric identifier or biometric information is being collected,

---

[4] "Sally Beauty Expands 'Color Before You Commit' ColorView™ AI Technology to Mobile App and to In-Store Experience in 500 Locations Nationwide", Sally Beauty Holdings, Inc., prnewswire.com. https://www.prnewswire.com/news-releases/sally-beauty-expands-color-before-you-commit-colorview-ai-technology-to-mobile-app-and-to-in-store-experience-in-500-locations-nationwide-300951937.html (Nov. 5, 2019).

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

stored, and used; and (c) provide a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

24. Defendant's website does not make publicly available a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from consumers, as required by BIPA.

25. Upon information and belief, Defendants have not developed a written policy establishing retention schedules and guidelines for permanently destroying consumers' biometric information and do not destroy such data within the timeframes established by BIPA.

**SALLYBEAUTY.COM**

26. The website at sallybeauty.com displays a menu item titled "Try On Virtual Hair Color" which transfers consumer to a web page that appears as follows:

**Finding the perfect color has never been easier.**

Try as many as you want to find the perfect new hair color for you — with 100s of options to explore!

https://www.sallybeauty.com/colorview/.

27. After consumers click the "Get Started" button, a pop-up appears that allows the consumer to use their web camera or phone camera to display a real-time image of themselves, upload a photo previously saved to their device, or choose a model.

FILED DATE: 1/20/2023 11:10 AM  2022CH09383



28.     When consumers click "Live Hair Color" the virtual try-on tool activates their webcam automatically, opens the try-on tool, and presents the consumer with a real-time image of their face.

29.     The Virtual Try-On tool captures the facial geometry of the consumer and process that data sufficiently to overlay a different color on the consumer's hair. As noted by the technology developer and the press releases issued by Sally Beauty when the technology was launched, the Try-On Tool aggregates biometric information about consumers across different platforms, brands, and Sally Beauty Holdings Inc. subsidiaries, and uses that information to provide an accurate virtual try on experience. Informal tests of the technology reveal that the Try-On Tool does not function unless a human face is detected, and does not work if, for example, the camera is pointed at a dog. On information and belief, the facial recognition map enables the Try-On Tool to follow the user's image in the camera field of view and to continuously update the placement of the altered hair color.

30.     The Virtual Try On tool on Defendants' websites is powered by an application called "YouCam Makeup." This application operates by capturing the facial geometry of users' photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try On tool, uploaded to the tool, or captured via a live web or phone camera feed. These facial-geometry scans are

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

used to identify the shape and features of the user's face in order to accurately overlay the virtual product onto the image provided. According to the developer of YouCam Makeup, the application uses proprietary AgileFace® technology, a "cutting-edge ultra-accurate face tracking technology" to enable an "extremely precise AR makeup product application that stays in the correct position with head movements, allowing [users] to examine the look and see the tutorials from from multiple angles."[5] According to one article, the YouCam Makeup application "uses 100 points of tracking on the face" to follow the users' movements while using the tool and update the on-screen image in real time.[6]

31. The developer of the YouCam Makeup application markets its product at least in part on its ability to capture, store, and use consumers' biometrics to market products to them. According to the developer's Vice President of Marketing, "in the near future, consumers will be able to walk into a store, and the in-store technology will be able to identify and recommend products they've tried on virtually before."[7]

32. Facial geometry is a biometric identifier protected by BIPA. 740 ILCS 14/10.

33. Defendants' use, storage, and sharing of their customers' biometric identifiers to provide recommendations across various product categories and brands constitutes use of biometric information as defined by BIPA. *Id.*

---

[5] "YouCam Tutorial | Step-By-Step AR Makeup Application Learning Platform. Course Authoring Software by Perfect Corp." https://www.linkedin.com/products/perfect-corp-youcam-tutorial-stepbystep-ar-makeup-application-learning-platform/ (last visited Sept. 14, 2022).

[6] Leah Prinzivalli, *How YouCam Makeup is Building a Beauty AR empire,* Glossy (July 5, 2018), https:/ /www.glossy.co/ new-face-of-beauty /how-youcam-makeup-is-building-a-beauty-ar-empire/.

[7] *Id.*

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

34. On information and belief, throughout the class period and for all means of accessing the Try-On Tool, users of the Try-On Tool were not directed to review any terms and conditions or policies, if any, related to the use of the Try-On Tool prior to or during the use of the tool.

35. Defendants' actions were intentional. Defendants procured the YouCam application, incorporated it into the websites, in-store kiosks, and mobile applications described above, created access points and marketing materials designed to lead Plaintiff and other users to the tool, collected and processed the biometric identifiers and generated biometric information therefrom, and actively marketed both the tool itself and Defendants' expanded capacity for targeting an individual user as the user moves through Defendants' retail and brand ecosystem by using the biometric identifiers and information generated by the tool.

**ALLEGATIONS SPECIFIC TO PLAINTIFF**

36. Plaintiff is a resident of Petersburg, Illinois.

37. Between May 2019, and July 2020, and then again between May 2021 and August 2021, Plaintiff used Defendants' browser-based Virtual Try On tool approximately 10 times. Each time, Plaintiff was located in Illinois. On each occasion, Plaintiff spent approximately 30 minutes using the tool to try out different hair colors. Plaintiff accessed the tool using the browser on her Android mobile phone.

 

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

38. During one period of her use of the try-on tool, Plaintiff's minor son also used the tool to try on different hair colors.

39. After trying different hair colors, Plaintiff did not make a purchase through the site and did not provide authorization to store her biometric information.

40. When Plaintiff used the Virtual Try On tool, Defendants captured and collected her facial geometry and created a geometric map of her face. The Virtual Try-On tool could not have provided the advertised experience if Defendants did not capture, collect and process Plaintiffs facial geometry.

41. Upon information and belief, Defendants stored her facial geometry in a file for an unspecified period of time after Plaintiff used the Virtual Try-On tool and exercised or continues to exercise complete control, including possessing unfettered access, over Plaintiff's biometric information.

42. As discussed above, Defendants did not (a) inform Plaintiff in writing that they were capturing, collecting, storing, or using scans of her facial geometry; (b) inform Plaintiff in writing of the specific purpose and length of time for which her facial geometry was being collected, stored, or used; and (c) obtain a written release from Plaintiff authorizing Defendants to collect, store, create or use her facial geometry.

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

43. Plaintiff has never been informed of the specific purposes or length of time for which Defendants collected, stored, or used her facial geometry, of any biometric data retention policy developed by Defendants, or whether Defendants will ever permanently delete her biometric information. Defendants have not made any of this information available to the public.

44. Plaintiff does not know whether Defendants have destroyed-or will destroy-the biometric information collected from her.

45. At the times she used the Try-On Tool, Plaintiff was not directed to review terms and conditions or policies, if any, related to its use. As of the date this Complaint is filed, Plaintiff has not reviewed any of Defendants' terms and conditions or policies.

46. Defendants' actions occurred within the State of Illinois. When Plaintiff, located in Illinois, interacted with Defendants' servers in Illinois to access Defendants' website, Defendants knowingly provided and directed Plaintiff to the Try-On tool. Upon information and belief, Defendants, using servers in Illinois to serve up the Try-On tool to Plaintiff, actively collected and processed Plaintiff's facial geometries in Illinois.

**CLASS ALLEGATIONS**

47. Plaintiff brings this action on behalf of herself and, pursuant to 735 ILCS 5/2-801, on behalf of a class of similarly situated individuals (hereinafter "the Class") defined as follows:

> All persons whose biometric identifiers were captured by Defendants through use of the Virtual Try-On tool on Defendants' websites, mobile apps and in-store kiosks in Illinois while residing in Illinois from five years preceding the date of the filing of this action to the present.

48. Excluded from the class are Defendants' officers and directors, Plaintiff's counsel, and any member of the judiciary presiding over this action.

49. Numerosity: Upon information and belief, there are more than 40 class members, and individual joinder in this case is impracticable.

50. Commonality and predominance: Multiple questions of law and fact are common to the class and predominate over any individualized questions. Common questions include, but are not limited to, whether Defendants have a practice of capturing, collecting, storing, or distributing

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

consumer biometric information obtained through consumers' use of the Virtual Try-On tool on Defendants' websites; whether Defendants have developed and made publicly available a written policy establishing a retention schedule and guidelines for destroying consumer biometric information; whether Defendants obtained an executed written release from consumers whose faces were scanned using the Virtual Try-On tool on Defendants' websites before capturing their biometric information; whether Defendants' practices violate BIPA; and whether Defendants' conduct was willful, reckless, or negligent.

51. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of all Class members. She has retained counsel with significant experience and achievements in complex class action litigation, she has no interests that are antagonistic to those of any Class members, and Defendants have no defenses unique to her.

52. Appropriateness: A class action is an appropriate method for the fair and efficient adjudication of the controversy because it will resolve multiple issues common to the Class in a single action. A class action would reduce the time and expense of litigation and promote judicial economy by jointly resolving a large number of individual claims that would otherwise be litigated separately in duplicative proceedings.

**COUNT I**

**VIOLATION OF Section 15(a) of the Illinois Biometric Privacy Act**

***(On Behalf of Plaintiff and the Class)***

53. Plaintiff re-alleges and incorporates the allegations in the preceding paragraphs.

54. The Virtual Try-On tool operates by capturing and collecting facial geometry to perform facial recognition, facial mapping and real-time biometric tracking.

55. Facial geometry is a biometric identifier protected by BIPA.

56. Defendants have violated Section 15(a) of BIPA by failing to develop a written policy made available to the public providing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information as requires by the statute, and injured Plaintiff and the

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

Class by capturing, collecting, and using their biometric identifiers and biometric information without creating and following a retention schedule and retention guidelines.

57. As a result, Defendants denied Plaintiff and the other Class members of their rights under BIPA to be made aware of their retention and destruction policies as to their biometric identifiers. Additionally, Defendants' failure to develop the required retention and destruction policies placed Plaintiff's and the other Class members' sensitive biometric identifiers at risk of compromise or illicit use by Defendants and others.

58. Pursuant to Section 20 of BIPA, Plaintiffs and the Class are statutorily aggrieved by Defendants' violations of Section 15(a) of BIPA.

59. At all times mentioned herein, Defendants were aware of the provisions of Section 15(a) of BIPA and intentionally failed to provide required written disclosures or to develop the required retention and deletion policies, in violation of Section 15(a) of BIPA.

60. Plaintiff and Class members are entitled to liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages if greater than the liquidated damages provided for by BIPA.

61. During the Class Period, none of the Plaintiffs nor any Class Members suffered any injury as a result of the violations of Section 15(a) of BIPA other than the statutory aggrievement alleged herein.

62. **WHEREFORE**, Plaintiff, individually and on behalf of the Putative Class, requests an order granting the following relief:

a. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Heather Durheim as Class Representative and appointing Kassra Nassiri of Nassiri & Jung LLP as Class Counsel;

b. Declaring that Defendants' actions, as set forth above, violate Section 15(a) of BIPA;

c. Declaring that Defendants' actions, as set forth above, were intentional and/or reckless;

d. Entering judgment in favor of Plaintiff and the Class against Defendants;

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

e. Awarding Plaintiff and the Class liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation for each violation of BIPA;

f. Awarding Plaintiff and the Class their reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

g. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

h. Awarding such other and further equitable relief as BIPA, equity, and justice may require.

**COUNT II**

**Violation of Section 15(b) of the Illinois Biometric Privacy Act**

**(On Behalf of Plaintiff and the Class)**

63. At all Plaintiff re-alleges and incorporates the allegations in the paragraphs above.

64. During the Class Period, Defendants individually and through their agents and representatives, collected, captured, or otherwise obtained and/or stored Plaintiff's and the Class's biometric identifiers or biometric information within the state of Illinois, without first (1) informing the subject or subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informing the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receiving a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

65. Defendants did not provide any of these required written disclosures to Plaintiff or Class members prior to collecting, storing, or using their facial geometry data obtained through use of the Virtual Try-On tool. Nor did Defendants receive a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

66. At all times mentioned herein, Defendants were aware of the provisions of Section 15(b) of BIPA that prohibit a private entity in Illinois, such as Defendants, from collecting, capturing,

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifier or biometric information without first performing the above steps.

67. Pursuant to Section 20 of BIPA, Plaintiffs and the Class are statutorily aggrieved by Defendants' violations of Section 15(b) of BIPA.

68. During the Class Period, none of the Plaintiffs nor any Class Members suffered any injury as a result of the violations of Section 15(b) of BIPA other than the statutory aggrievement alleged herein.

69. **WHEREFORE**, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

a. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Heather Durheim as Class Representative and appointing Kassra Nassiri of Nassiri & Jung LLP as Class Counsel;

b. Declaring that Defendants' actions, as set forth above, violate Section 15(b) of BIPA;

c. Declaring that Defendants' actions, as set forth above, were intentional and/or reckless;

d. Awarding statutory damages of $5,000 per Plaintiff and Class member for each intentional and/or reckless violation of Section 15(b) by the Defendants pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 per Plaintiff and Class member for each negligent violation of Section 15(b) by the Defendants pursuant to 740 ILCS 14/20(1);

e. Awarding Plaintiff and the Class their reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

f. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

g. Awarding such other and further equitable relief as BIPA, equity, and justice may require.

**COUNT III**

**Violation of Section 15(c) of the Illinois Biometric Privacy Act**

***(On Behalf of Plaintiff and the Class)***

70. Plaintiff re-alleges and incorporates the allegations in the paragraphs above.

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

71. During the Class Period, Defendants, acting for profit, individually and through their agents and representatives, shared and profited from Plaintiff's and the Class's biometric identifiers or biometric information within the state of Illinois.

72. At all times mentioned herein, Defendants were aware of the provisions of Section 15(c) of BIPA that prohibit a private entity in Illinois, such as Defendants, from selling, leasing, trading, or otherwise profiting in Illinois from a person's biometric identifier or biometric information.

73. During the Class Period, Defendants intentionally shared access to Plaintiff's and the Class's biometric identifiers or biometric information among a group of affiliated businesses in Illinois or otherwise profited in Illinois from Plaintiff's and the Class's biometric identifiers or biometric information, in violation of Section 15(c) of BIPA.

74. Pursuant to Section 20 of BIPA, Plaintiffs and the Class are statutorily aggrieved by Defendants' violations of Section 15(c) of BIPA.

75. During the Class Period, none of the Plaintiffs nor any Class Members suffered any injury as a result of the violations of Section 15(c) of BIPA other than the statutory aggrievement alleged in Paragraph 38.

76. **WHEREFORE**, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

   a. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Heather Durheim as Class Representative and appointing Kassra Nassiri of Nassiri & Jung LLP as Class Counsel;

   b. Declaring that Defendants' actions, as set forth above, violate Section 15(c) of BIPA;

   c. Declaring that Defendants' actions, as set forth above, were intentional and/or reckless;

   d. Awarding statutory damages of $5,000 per Plaintiff and Class member for each intentional and/or reckless violation of Section 15(c) by the Defendants pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 per Plaintiff and Class member for each negligent violation of Section 15(c) by the Defendants pursuant to 740 ILCS 14/20(1);

FILED DATE: 1/20/2023 11:10 AM 2022CH09383

e. Awarding Plaintiff and the Class their reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

f. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

g. Awarding such other and further equitable relief as BIPA, equity, and justice may require.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

DATED: January 20, 2023

Respectfully submitted,
NASSIRI & JUNG LLP

By: /s/ Kassra P. Nassiri

Kassra P. Nassiri (215405)
(kass@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

Shaw Legal Services, Ltd.

By: /s/ Anne Shaw

Anne Shaw
Shaw Legal Services, Ltd.
540 W. Briar Street, Suite B
Chicago, Illinois 60657
(773) 549-9500
ashaw@shawattorneys.com

Attorneys for Plaintiff
Heather Durheim